Filed 3/30/26  P. v. Lemmon CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C103532 |
| v. | (Super. Ct. No. CRF11-0007820-03) |
| KEVIN FRANK LEMMON, | |
| Defendant and Appellant. | |

Based on crimes that occurred in 2011, a jury found defendant Kevin Frank Lemmon guilty of first degree murder, first degree robbery, and first degree burglary. It found true allegations of robbery in concert, and that defendant committed murder while engaged in the robbery and burglary.  In sentencing defendant, the trial court imposed life without the possibility of parole, a consecutive term of eight years for the robbery in concert, and a prior prison term enhancement.  On direct appeal, this court affirmed the convictions but modified the sentence to correct a sentencing error.  (*People v. Lemmon* (Sept. 29, 2016, C074689) [nonpub. opn.], opn. modified Oct. 25, 2016.)

1

In 2019, defendant filed a petition for resentencing under what is now Penal Code section 1172.6.[1]  The trial court denied the petition and this court affirmed.  (*People v. Lemmon* (May 23, 2022, C090231) [nonpub. opn.].)  But the California Supreme Court granted review and transferred the case back to this court with directions to vacate the previous decision and to reconsider the matter in light of *People v. Strong* (2022) 13 Cal.5th 698.  After reconsidering the matter, this court reversed the trial court's order and remanded the case for further proceedings.  (*People v. Lemmon* (Nov. 28, 2022, C090231) [nonpub. opn.].)  On remand, the trial court held an evidentiary hearing.  The People relied on the reporter's transcript from the trial, and defendant presented no additional evidence.  The trial court denied the petition, ruling that defendant could presently be convicted of felony murder as a major participant in the robbery and burglary who acted with reckless indifference to human life.

Defendant now contends (1) there was insufficient evidence to support the trial court's finding that defendant committed felony murder as a major participant who acted with reckless indifference to human life, and (2) the trial court applied the wrong standard to make its determination.

We agree the evidence was insufficient to support the trial court's reckless indifference finding.  Accordingly, we will reverse the trial court's order denying the petition for resentencing and remand the matter with directions to grant the petition, vacate defendant's murder conviction, and resentence him.  Under the circumstances, we need not address whether defendant was a major participant or whether the trial court applied the correct standard.

---

[1]  Undesignated statutory references are to the Penal Code.

BACKGROUND

In December 2011, defendant and his girlfriend Amanda were living in a home in Redding. Kevin Matthews was defendant's friend. On December 14, 2011, Amanda received a phone call and then said something to defendant. Defendant asked Matthews to come with him to retrieve Amanda's belongings from Steven Johnson's motel room, and Matthews agreed.

Defendant used his truck to drive Matthews and codefendant Willam Lee Freed, Jr., to the motel. On the way, defendant said if Johnson did not hand over Amanda's belongings, they would " 'kick his ass if they had to.' " Defendant and Freed talked about the motel room — room 117 — where they expected to meet a woman named Shawna.

When defendant, Matthews, and Freed arrived at the motel, they noticed three teenage boys outside room 117. Defendant spoke to Amanda by phone to ask if Shawna was alone in room 117. After speaking with her, defendant informed Freed and Matthews that according to Amanda, Johnson had $1,900 and a bag of methamphetamine in his room. Defendant said they would obtain Amanda's things and take anything else that was there.

Defendant had a can of pepper spray. He handed Matthews a crowbar. Matthews said he did not want it and threw it back in the truck. Matthews did not see anything in Freed's possession.

Defendant and Freed planned to enter the room after knocking on the door. Freed said he would knock on the door of room 117 and ask for a glass of water. Matthews refused to go in with them. Defendant asked Matthews to stand outside and keep watch.

The three men did not go directly to room 117, because defendant was concerned about the three boys. The men ran into the boys on the way, defendant asked them if they knew "Steve," and they said no. Eventually, Freed arrived at the room and knocked on the door. When Johnson answered, Freed asked for a glass of water and said, "Do you

3

remember me?" When Johnson said he did not, Freed punched him in the face and entered the room. Defendant ran after him into the room.

Matthews could hear fighting and things being tossed around. He became concerned when people began to look out their doors and windows. Matthews went to room 117, and through the partially opened door, he saw defendant's arm in a backward swinging motion. Defendant had a backpack in his other hand. Matthews closed the door and went back to the truck. It was later determined that Johnson died from multiple stab wounds.

As Joseph Stewart was getting ice at the motel, he saw defendant by the stairway. Stewart heard voices and someone yelling, " 'Stop the fucking fight and get off him.' " It sounded like the yelling was coming from one of the rooms. When Stewart looked back toward the stairway, he no longer saw defendant. A short time later, Stewart saw defendant help another man leave the parking lot.

When defendant and Freed returned to the truck, defendant had two backpacks, and Freed indicated he had been sprayed with pepper spray. Defendant complained that Freed had gone too far, shouting to Freed, " 'What the fuck were you doing?' " Freed yelled back, " 'What was I supposed to do? He was fighting back.' " Defendant said, " '[W]e were only supposed to rough the guy up.' " Freed held up a six- to eight-inch folding knife and asked defendant, " 'What am I supposed to do with this?' " Defendant responded, " 'Fuck you; that's on you.' " Freed asked again, defendant told him to get rid of it, and Freed tossed the knife out the window. Defendant asked Freed what he had gotten out of the victim's pocket. Freed answered " 'this,' " and threw wadded-up bills on the dashboard.

Sergeant Todd Cogle of the Redding Police Department responded to the scene. Among other things, he found what looked like a can of pepper spray or mace lying near Johnson's body. DNA from the spray can matched defendant's DNA profile. In addition, officers found the knife in a search of the area. DNA testing of dried blood

4

on the knife blade matched Johnson's DNA. DNA on the knife handle matched Freed's DNA. Freed had owned a silver folding knife.

When defendant, Freed, and Matthews returned to defendant's house, Freed and defendant washed their faces and defendant put the truck in the garage. That evening Freed mentioned using a knife and stabbing someone. Freed said, "I think he's dead" and "I think I stabbed him eight deep and he's dead."

## DISCUSSION

Defendant contends there was insufficient evidence to support the trial court's finding that defendant committed felony murder as a major participant who acted with reckless indifference to human life.

### A

"Murder is the unlawful killing of a human being . . . with malice aforethought." (§ 187, subd. (a).) Section 189 describes a number of unlawful killings that are statutorily defined as "murder of the first degree," including a killing "committed in the perpetration of, or attempt to perpetrate" robbery and burglary (among other enumerated felonies). (§ 189, subd. (a).) That form of first degree murder, known as first degree felony murder, does not require malice. Prior to Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), " 'the only criminal intent required [was] the specific intent to commit the particular felony.' " (*People v. Dillon* (1983) 34 Cal.3d 441, 475.)

Effective January 1, 2019, Senate Bill 1437 amended the felony-murder rule to provide, in relevant part: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life . . . ." (§ 189, subd. (e).)

5

Where, as here, the trial court issues an order to show cause and holds an evidentiary hearing, the prosecution bears the burden of proving beyond a reasonable doubt that the defendant is guilty of murder under California law as amended by Senate Bill 1437. (§ 1172.6, subd. (d)(3).) The parties may rely on evidence in the record of conviction or offer new or additional evidence at the hearing. (*Ibid*.) The trial court acts as an independent fact finder and determines whether the evidence establishes beyond a reasonable doubt that the defendant would be guilty of murder under the amended sections 188 and 189 and, therefore, ineligible for relief under section 1172.6. (*People v. Cody* (2023) 92 Cal.App.5th 87, 110.)

Defendant was charged with murder based on a felony-murder theory. He was not the actual killer; the evidence conclusively established that Freed stabbed the victim. And there is no evidence defendant intended for Freed to kill Johnson. Thus, in order to affirm the trial court's order denying defendant's resentencing petition, there must be substantial evidence that defendant was a major participant in the attempted robbery and that he acted with reckless indifference to human life. We need not address whether defendant was a major participant because we agree the evidence was insufficient to establish that he acted with reckless indifference.

" 'Because the sufficiency of the evidence is ultimately a legal question, we must examine the record independently for " 'substantial evidence—that is, evidence which is reasonable, credible, and of solid value' " that would support a finding beyond a reasonable doubt.' [Citation.] We must 'review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt. [Citation.] . . . [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the [trier of fact] could reasonably have deduced from the evidence. [Citation.] "Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive

6

province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." ' [Citation.]" (*People v. Montanez* (2023) 91 Cal.App.5th 245, 270.)

B

The major participation and reckless indifference requirements contained in section 190.2, subdivision (d), and incorporated into the felony-murder rule by Senate Bill 1437, codify the holding of *Tison v. Arizona* (1987) 481 U.S. 137 (*Tison*). *Tison* and a prior decision on which it is based, *Enmund v. Florida* (1982) 458 U.S. 782, collectively place conduct on a spectrum. (*People v. Banks* (2015) 61 Cal.4th 788, 794 (*Banks*).)

At one end of the spectrum is a defendant like Enmund, who planned and participated, as the getaway driver, in an armed robbery that resulted in the unplanned murder of the robbery victim and his wife. (*Banks, supra*, 61 Cal.4th at p. 799.) At the other end of the spectrum are "actual killers and those who attempted or intended to kill." (*Id.* at p. 800.) In between are defendants like the Tison brothers, who "helped plan and carry out the escape of two convicted murderers from prison," including their father, who "was serving a life sentence for killing a guard in the course of a previous escape." (*Id.* at p. 802.) The Tison brothers brought "a cache of weapons to prison, arm[ed] both murderers, and [held] at gunpoint guards and visitors alike." (*Ibid*.) During their subsequent escape, they carjacked and kidnapped a family of four, took the family's possessions, and the convicted murderers "then killed all four family members." (*Id.* at p. 799.) Although the Tison brothers did not kill or intend to kill, their " 'major participation in the felony committed, combined with reckless indifference to human life, [was] sufficient to satisfy the *Enmund* culpability requirement.' [Citation.]" (*Id.* at p. 800.)

Elaborating on the reckless indifference requirement, the California Supreme Court has explained that " '[r]eckless indifference to human life is "implicit in knowingly

7

engaging in criminal activities known to carry a grave risk of death." ' [Citations.]"
(*People v. Emanuel* (2025) 17 Cal.5th 867, 883 (*Emanuel*).) "The defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed, demonstrating reckless indifference to the significant risk of death his or her actions create." (*Banks, supra*, 61 Cal.4th at p. 801.) Although the major participation and reckless indifference elements are interrelated such that " 'the greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life' " (*People v. Clark* (2016) 63 Cal.4th 522, 615 (*Clark*), quoting *Tison, supra*, 481 U.S. at p. 153), significant participation does not necessarily establish reckless indifference (*Clark,* at p. 615), which " 'encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions.' [Citation.]" (*Emanuel, supra*, 17 Cal.5th at p. 883.)

" 'The degree of risk to human life is crucial to the analysis.' [Citation.] As the United States Supreme Court has acknowledged, ' "the possibility of bloodshed is inherent in the commission of any violent felony," ' such that one who perpetrates or attempts to perpetrate such a crime may well anticipate 'the use of lethal force as a *possibility*.' [Citation.] Were that degree of culpability sufficient, however, it would amount to ' "little more than a restatement" ' of the former felony-murder rule that Senate Bill No. 1437 retired. [Citation.] ' "Awareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient" to establish reckless indifference to human life; "only knowingly creating a 'grave risk of death' " satisfies the statutory requirement.' " (*Emanuel, supra*, 17 Cal.5th at p. 884.)

In determining whether defendant acted with reckless indifference, "[w]e analyze the totality of the circumstances" using the following factors derived from *Clark*: (1) Did defendant know that a weapon would be used during the felony? (2) Was defendant present during the murder and did he have an opportunity to restrain the perpetrator or aid

the victim?  (3) What was the duration of the interaction between the perpetrators of the felony and the victim?  (4) What was defendant's knowledge of his confederate's propensity for violence or likelihood of using lethal force?  (5)  What efforts did defendant make to minimize the risk of violence during the felony?  (*In re Scoggins* (2020) 9 Cal.5th 667, 677; see also *Emanuel, supra*, 17 Cal.5th at pp. 884-885.)

C

With the foregoing factors in mind, we conclude substantial evidence does not support the trial court's finding that defendant acted with reckless indifference to human life.

The first *Clark* factor weighs in favor of defendant.  There is no evidence defendant knew Freed was armed with a knife.  (*People v. Underwood* (2024) 99 Cal.App.5th 303, 317 (*Underwood*).)  Matthews testified he never saw Freed with the knife until after he stabbed Johnson.  Defendant armed himself with a can of pepper spray.  Even if pepper spray was a dangerous weapon (see *People v. Blake* (2004) 117 Cal.App.4th 543, 556-559), there is no evidence in the record that its use would create a grave risk of death.  And the only evidence of injury from pepper spray was to defendant and Freed.

The second factor — whether defendant was present during the murder and had an opportunity to restrain Freed or aid Johnson — is neutral.  Although defendant was in the room where Freed stabbed Johnson, as the court in *Clark* explained, physical presence is particularly significant in a case like *Tison*, where the murder was "a culmination or a foreseeable result of several intermediate steps, or where the participant who personally commits the murder exhibits behavior tending to suggest a willingness to use lethal force. In such cases, 'the defendant's presence allows him to observe his cohorts so that it is fair to conclude that he shared in their actions and mental state. . . .  [Moreover,] the defendant's presence gives him an opportunity to act as a restraining influence on murderous cohorts.  If the defendant fails to act as a restraining influence, then the

defendant is arguably more at fault for the resulting murders.' [Citation.]" (*Clark, supra*, 63 Cal.4th at p. 619.)

Here, defendant did not take any steps to aid Johnson after the stabbing. On the other hand, the murder was sudden and unexpected. In the car ride back to the house, the argument between defendant and Freed indicated that the stabbing was an unplanned and spontaneous reaction by Freed when the victim fought back. As the court stated in *Emanuel*, "where a crime unfolds quickly, this factor — the failure to restrain a cohort — cannot be said to weigh in favor of a finding of reckless indifference without some evidence in the record indicating that the defendant had a meaningful opportunity to do so. [Citation.] This requires some awareness of the risk of impending lethal violence and time to react." (*Emanuel, supra*, 17 Cal.5th at p. 892.)

The third factor, duration of the felony, weighs in defendant's favor. There was no "prolonged period of restraint" creating " 'a greater window of opportunity for violence' [citation], possibly culminating in murder." (*Clark, supra*, 63 Cal.4th at p. 620.) Matthews testified that from the time Freed entered room 117 until Freed and defendant exited the room was "between 45 seconds and a minute . . . ." (*Underwood, supra*, 99 Cal.App.5th at p. 318 ["the duration of the interaction between the perpetrators and the victim was brief; only a few minutes passed from the time" they approached the victim to "when they fled"].)

The fourth factor, whether defendant had knowledge of Freed's likelihood of killing, also weighs against a finding of reckless indifference. (*Underwood, supra*, 99 Cal.App.5th at p. 318.) There is no evidence defendant had such knowledge. Rather, the evidence indicated defendant was surprised by the stabbing. During the car ride back to the house, defendant yelled, " 'What the fuck were you doing? We were only supposed to . . . rough the guy up.' " Defendant's response to Freed when he asked what to do with the knife—" 'Fuck you; that's on you' "—is further evidence defendant had no knowledge Freed would use a knife and that defendant was angry Freed did so.

The fifth *Clark* factor —the effort to minimize the risk of violence during the robbery—initially appears to weigh against defendant.  The factor was relevant in *Clark* because the defendant "was the principal planner and instigator of the robbery," so his "apparent efforts to minimize the risk of violence" inherent in his robbery were "relevant to the reckless indifference" analysis.  (*Clark, supra*, 63 Cal.4th at p. 622.)  Here, defendant was also the principal planner.  Defendant elevated the risk of violence when he informed Freed and Matthews that they would not only retrieve Amanda's property but also take money and drugs from Johnson.  (See *In re McDowell* (2020) 55 Cal.App.5th 999, 1013 [defendant "chose to plan and lead a crime with a particularly high risk of violence—a home invasion robbery of a drug dealer"].)  In addition, defendant attempted to induce Matthews to arm himself with crowbar—a weapon potentially deadlier than pepper spray—and enter the room.  However, defendant did not press Matthews when he declined to take the crowbar or enter the room.  In addition, defendant was not himself armed with a deadly weapon, there is no evidence he knew Freed possessed the knife at the time of the crime, and defendant had little time to stop the stabbing once he realized it was occurring.  Defendant's statement beforehand, that if Johnson did not hand over Amanda's property they would "kick his ass if they had to," was consistent with his exclamation to Freed afterward that they were only supposed to "rough the guy up."

As the Supreme Court pointed out in *Emanuel*, the absence of efforts to minimize violence "does not necessarily evince a subjective disregard for risk where the objective circumstances of the planned crime suggest the risk of violence posed is no more than that inherent in a violent felony."  (*Emanuel, supra*, 17 Cal.5th at p. 888, citing *Scoggins, supra*, 9 Cal.5th at p. 679 [no reason for the defendant to instruct his accomplices not to use lethal force because his plan was for his accomplices to beat up the victim].)  In this case, the evidence was that defendant did not plan for the use of lethal force but simply to overpower Johnson.  (*Underwood, supra*, 99 Cal.App.5th at p. 319 [defendant intended

11

only to overpower the victim and take his wallet].)  Therefore, the absence of efforts to minimize the risk of violence does not necessarily weigh in favor of a finding of reckless indifference, particularly where the planned crime did not involve the use of deadly weapons.  (*Emanuel*, at p. 888.)

## DISPOSITION

The order denying defendant's petition for resentencing is reversed.  The matter is remanded to the trial court with directions to grant the petition, vacate defendant's murder conviction, and resentence him.


_____/S/_____
MAURO, J.


We concur:


\_\_\_\_\_/S/_____
HULL, Acting P. J.


_____/S/_____
MESIWALA, J.

12